ALBANY,
August, 1812.

MAR. INS. CO.
v.
UNIT. INS. CO.

THE MARINE INSURANCE COMPANY OF NEW-YORK *against*
THE UNITED INSURANCE COMPANY.

*The cargo and freight of a vessel were separately insured, by different underwriters, from Bordeaux, to New-York. The vessel having performed eighteen nineteenths of her voyage, was captured, on the 23d October, 1806, and carried into Halifax, where she and her cargo were libelled in the viceadmiralty court, as prize, and further proof ordered. A. a merchant at Halifax, obtained an appraisement of them, and became security, by bond, to answer the amount; and the property was, thereupon, delivered to him. He took new bills of lading for the cargo, in his own name, and* shipped it in his own name, in the same vessel, consigned to B. his own agent in *New-York*, with directions to deliver the cargo to C. the owner, on his indemnifying A. for his bond, and all expenses, which C. refused to do.

*In February*, 1807, the *cargo* and *freight* were abandoned to both underwriters, who paid a total loss, the 21st *June*, 1807. On producing further proof the vessel and cargo were liberated, on the 1st *April*, 1807. The vessel, on her voyage from *Halifax* to *New-York*, was stranded and lost; but the cargo was saved and delivered to the consignee at *New-York*, who sold it at auction, and paid the net proceeds, after deducting all the expenses at *Halifax, &c.* to the insurers on the cargo.

*In an action brought by the insurers on the* freight, *against the insurers on the* cargo, *it was held, that no* pro rata freight *was due, the act of A. at* Halifax, *in receiving the cargo, being an act of* necessity, *done by a stranger, for the benefit of all concerned; and there must be a voluntary and unconditional acceptance, by the owner, at the intermediate port, to form the basis of a new contract to pay a* ratable freight.

*The acceptance of the net proceeds of the cargo, by the insurers, after abandonment, forms no ground for a claim of freight against them. The insurer on the cargo has nothing to do with the freight.*

THIS was an action for money had and received to the use of the plaintiffs. A verdict was taken, by consent, at the *June* sittings, in the city of *New-York*, for a nominal sum, subject to the opinion of the court, upon the following case; the amount to be adjusted upon such principles as the court might direct, in case judgment should be given for the plaintiffs.

In the year 1806, an open policy of insurance was underwritten by the defendants, on the interest of *William Wood*, in the cargo of the ship *Enterprize*, amounting to 12,000 dollars, from *Bordeaux* to *New-York*. The residue of the cargo, owned by other persons, amounted to 14,000 dollars. The plaintiffs underwrote a policy on the *freight* of the same vessel, for the same voyage, valued at 2,500 dollars, for *Wood*, the owner of the vessel, which was worth 9,000 dollars. She sailed on the voyage insured, and when she had performed eighteen nineteenths of her voyage, she was captured, on the 23d of *October*, 1806, and sent into *Halifax*. The assured thereupon, on the 23d *February* following, abandoned on both policies, which abandonments were not accepted; but a total loss was, afterwards, paid on the cargo policy, as hereafter stated. The vessel and cargo were libelled in the court of admiralty at *Halifax*, as prize, and further proof ordered; whereupon the house of *Forsyth, Smith & Co.* obtained an appraisement of the vessel, and of *Wood's* part of the cargo, on behalf of the owners, and became security, by bond, to answer to that amount. The decree which might be given, and the property, were ordered to be delivered to them. They took new bills of

lading of *Wood's* part of the cargo, from the captain, in their own names, and shipped it in the same vessel, to *New-York*, consigned to their own agents, *Lenox* and *Maitland*, with directions to deliver it to *Wood*, on his paying the expenses, and sums already advanced, by *Forsyth, Smith & Co.* and fully indemnifying them against the security, or bond given by them; but *Wood* refused so to do; and *Lenox* and *Maitland* insured, on account of *Forsyth, Smith & Co.*, the cargo so shipped to *New-York*, at the office of the *Commercial Insurance Company*. The vessel and cargo, which had been thus bonded, proceeded on the voyage to *New-York*. During the voyage the vessel was stranded, shipwrecked, and wholly lost on the *American* coast. *Lenox* and *Maitland*, having heard of her disaster, sent out lighters, by which the cargo was saved, brought to the city of *New-York*, and there delivered to them, and was sold prior to the first of *April*, 1807. Further proofs were forwarded to *Halifax*, and on the 1st of *April*, 1807, the vessel, and *Wood's* part of the cargo, were liberated. On the 21st of *June*, 1807, the defendants paid to *Wood* a total loss on the cargo policy, and the plaintiffs paid a total loss on the freight policy. The net proceeds of the sales, made by *Lenox* and *Maitland*, amounted to 12,824 dollars and 5 cents, of which they paid to the defendants, in *July*, 1807, the sum of 6,524 dollars and 52 cents only, refusing to pay more, claiming to deduct, and actually deducting, the whole of the expenses incurred on both vessel and cargo at *Halifax*, charged and paid by *Forsyth, Smith & Co.* there, amounting to 3,677 dollars 71 cents, that sum forming a general average; and also the expenses of saving and transporting the cargo to *New-York*, equal to 2,737 dollars and 97 cents, together with 108 dollars and 84 cents, for interest. The amount of freight, for *Wood's* share of the cargo for the whole voyage, would amount to 1,146 dollars and 66 cents. The plaintiffs claimed, as the salvage of the defendants, a *pro rata freight* of that part of the cargo, from *Bordeaux* to *Halifax*, which, calculated upon five sixths of the voyage, would be 955 dollars and 55 cents, and upon eighteen nineteenths, 1,086 dollars and 31 cents.

The defendants contended that the plaintiffs were not entitled to recover of them, any freight; but if any, it could only be the proportion which the proceeds of the cargo actually received bear to the whole freight, on the original value of the cargo, insured by the defendants, or a *pro rata* freight on 6,524

ALBANY,
August, 1812.

MAR. INS CO.
v.
UNIT. INS. CO.

dollars and 52 cents, being the amount actually received by the defendants as aforesaid ; or, at most, the plaintiffs could not recover more than a *pro rata* freight, on the 12,824 dollars and 5 cents, deducting the general average expenses, being 3,677 dollars and 71 cents.

It was agreed, that if the court gave judgment for the plaintiffs, they should also decide whether the defendants were bound to pay interest, and if so, the same should be added to the amount to be recovered.

*Bristed,* for the plaintiffs, contended, 1. That a *pro rata* freight had been earned ; and, 2. That it belonged to the plaintiffs.

1. It was stated as settled law, by this court, in the case of *Robinson* v. *The Marine Insurance Company,** that where a vessel is forced into an intermediate port, and is unable to proceed to her port of destination, and the goods are received by the owner, at such intermediate port, freight is due for them, *pro rata itineris.* The equitable principle laid down in the case of *Luke* v. *Lyde,*† so often cited, has been adopted in this court. It is also a settled principle, that an abandonment once rightfully made, has relation back to the cause of loss, and takes effect from that time ;‡ so that the master, or person taking charge of the property, is to be deemed, after such event, the agent of the insurer. Is not the acceptance of an abandonment of the goods, equivalent to an acceptance of them at the intermediate port ? And must not the insured, as the assignee of the owner, stand in his place, and be equally bound to pay the freight ? If not, still the facts in this case amount to such an acceptance of them ; for the intermediate transactions must be considered as carried on by the *agents* of the insurers.

2. If, then, a *pro rata* freight has been earned, it belongs to the plaintiffs, to whom the whole has been abandoned by the shipowner, and to whom they have paid a total loss. Though, in *England,* the rights of the different sets of underwriters, in such case, seem not to be fully settled ;§ yet, from the principles laid down by this court, there can be no doubt that, by the law of this state, the insurers on the freight, not the shipowners, after an abandonment, are entitled to the freight earned.**

*Hoffman,* contra, insisted, that not a case was to be found in which it had been decided, that a *pro rata* freight was due at an intermediate port, where the *acceptance* of the goods was not *voluntary.*

*2 Johns. Rep. 323. 2 Caines' Rep. 21.

†2 Burr. 882.

‡ Marsh. on Ins. 601. 9 Johns. Rep. 1 —8. 1 Johns. Cases, 377.

§ Park, 227— 236. Marsh. 601—608. 4 East, 34. 3 Bos. & Pull. 479. 7 East, 24. 9 East, 378.

** See United Ins. Co. v. Lenox, 1 Johns. Cases, 377. S. C. 2 Johns. Cases, 543. 3 Caines' Rep. 16, 245. 251. 7 Johns. Rep. 432. 3 Johns. Rep. 49.

In the case of *Luke* v. *Lyde*, the freighter voluntarily accepted ALBANY, his goods, after the recapture. To make the owner or insu- August, 1812. rer liable for freight of goods, received at an intermediate port, MAR. INS. CO. the reception there must be voluntary, and not cast upon the UNIT. INS. Co. owner or insurer by any peril or necessity. If the owner of the ship becomes incapacitated to carry on the goods to the port of destination, the acceptance of them, at the intermediate port, is *ex necessitate*, and involuntary.

The broad principle deduced from the decision in the case of *Luke* v. *Lyde*, if not shaken, is, at least, narrowed, by the later de- cision in the court of K. B. in the case of *Liddard* v. *Lopes*.*  *10 *East*, 526. By what was said in that case, and in *Cook* v. *Jennings*,† the †7 *TermRep.* true sense of the opinion of Lord *Mansfield*, in *Luke* v. *Lyde*, 138. seems to be clearly understood and settled. The liability of the *freighter* to pay a ratable *freight* for the goods, rests wholly on his *voluntary acceptance* of them at the intermediate port. The principle of the case of *Liddard* v. *Lopes*, has been recognised and adopted by the supreme court of *Pennsylvania*, in the case of *Amroyd* v. *The Union Company*,‡ after a full examination of all ‡ 3 *Binney's* the authorities on this subject.                                    *Rep.* 437.

Again, whatever may be the law as to *pro rata* freight, when- ever the shipowner parts with his goods, his *lien* for the freight is gone ; for though the *contract*, as between him and the original *freighter*, may remain, yet the delivery of the goods to a third person, or purchaser, raises no implied contract to pay the freight.

The shipowner must resort either to his *lien* on the goods, or to the original *contract* of affreightment, in order to obtain his freight.

In *Baillie* v. *Modigliani*,§ it is stated by Lord *Mansfield*, as § *Marsh. on* a principle, that " as between the insured and the underwriters on *Ins.* 728. the *cargo*, it is a contract of indemnity, and the latter have no- thing to do with the *freight*." The present action is an attempt by the owner, *Wood*, to make his insurers pay freight. As owner of the ship, he gets all his *freight*. If he has thought pro- per to deliver the goods, without demanding the freight, the insu- rers cannot claim it. After the defendants have received freight, under the decisions of this court, as respects the rights between the two sets of underwriters, can the shipowner, *Wood*, or his in- surers, the plaintiffs, recover that freight of the defendants ?

*Colden*, in reply, observed that this court, in the case of *Ro-*

binson v. *The Marine Insurance Company*, after hearing all the cases cited, and a learned argument, had declared that it was now too late to dispute the law as laid down in the case of *Luke* v. *Lyde*. On the principle of that case, it cannot be denied that a *pro rata* freight was earned.

But the acceptance, in the present case, must be deemed voluntary. The defendants were not bound to accept the abandonment. When a peril happens that justifies an abandonment, and an abandonment is made and accepted, every person acting in regard to the property insured, must be deemed the agent of the insurers. Messrs. *Forsyth, Smith & Co.* became the agents of the defendants, and their acceptance of the goods was the same as if they had been received by the defendants. This point was expressly decided in the case of *The United Insurance Company* v. *Lenox.*

Suppose there had been no insurance on the *goods*, and *Wood*, by his agents, had received them at *Halifax*, could not the plaintiffs, to whom the *freight* had been abandoned, call on him to account for the *pro rata freight* due at *Halifax?* And have they not the same right now to call on the defendants, who are substituted in the place of *Wood*, to account for that freight? Suppose the insurers on the goods, after the abandonment, had sued *Wood* for them, could they recover the whole amount, without deducting the *pro rata* freight?

*Per Curiam.* The question first to be considered is, whether any freight was earned, or became due to the shipowner, for if it be once admitted that there was such an acceptance of the cargo, as to entitle the shipowner to freight, the rule by which this freight is to be apportioned, appears to be settled with us, by the case of *The United Insurance Company* v. *Lenox.* (1 *Johns. Cases*, 377. 2 *Johns. Cases*, 443.) The principle contained in the final decision of that case is, that the freight, prior to the loss, goes to the shipowner, or to his representative, the insurer on freight, to whom it was abandoned, and that the freight earned subsequent to the time of the loss goes, on abandonment, to the underwriter on the ship; and it appears to be understood that his claim to such subsequent freight would prevail over that of the insurer on the freight. (1 *Caines' Rep.* 573. 3 *Caines' Rep.* 20. 251. 3 *Johns. Rep.* 55. 7 *Johns. Rep.* 432. *Park*, 6*th* edit. 228. 236.)

The question, however, does not arise here between the insurers on ship and on freight; and if freight was due in this case, the plaintiffs would be entitled to a ratable proportion, and no more. But no freight was earned in this case; there was no delivery of the cargo at *New-York*, the port of destination; the ship was shipwrecked and lost, and the consignees of the cargo, as shipped from *Halifax*, and not the shipowner or his agent, saved it and brought it into port. The earning of entire freight is not pretended by the case, and the claim is founded wholly on the acceptance of the cargo at *Halifax*. But there was no acceptance there on which to raise an *assumpsit* to pay freight. After the vessel and cargo had been libelled by the captors, they were redeemed by the house of *Forsyth, Smith & Co.* on appraisement, and security given for the value; and the cargo was consigned by them to *Lenox* and *Maitland*, of *New-York*, their own agents, to be delivered to the owner on payment of an indemnity. *Wood*, the owner, refused to accept of the cargo, or to ratify the acts of *Forsyth, Smith & Co.* There never was any acceptance of the cargo by the owner or his authorized agent. The act of *Forsyth Smith & Co.* at *Halifax*, was an act of necessity, done by strangers, for the best interest of all concerned, and without prejudice to either party; but there must be a voluntary and unconditional acceptance by the owner, at the intermediate port, to form the basis of a new contract to pay a ratable freight. (10 *East*, 376. 526. 2 *Campb. N. P.* 466. 1 *Condy's Marshall*, 281. a. note. 3 *Binney*, 437.) The acceptance of the net proceeds of the cargo by the defendants, formed no ground for a claim for freight. These proceeds belonged to them, as insurers of the cargo, after paying a total loss, and there was no *lien* for freight attached to that cargo. The insurer on the cargo has nothing to do with the freight of it; and it would be a most forced construction to deduce a promise to pay freight from the acceptance by the insurer of the salvage or remains of the cargo.

Judgment for the defendants.